NEIL D. GREENSTEIN (SBN 123980)
TECHMARK
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
Telephone (347) 514-7717
Facsimile: (408) 280-2250
Email: ndg@techmark.com

MARTIN R. GREENSTEIN (SBN 106789)
TECHMARK, A Law Corporation
4820 HARWOOD ROAD, SUITE 110
SAN JOSE, CA 95124
Telephone: (408) 266-4700
Facsimile: (408) 850-1955
Email: mrg@techmark.com

Attorneys for Plaintiff
HURRICANE ELECTRIC LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HURRICANE ELECTRIC LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>DALLAS BUYERS CLUB, LLC, a California LLC; DALLAS BUYERS CLUB, LLC, a Texas LLC; GLACIER FILMS 1, LLC; DOUBLE LIFE PRODUCTIONS, INC.; VOLTAGE PICTURES, LLC; ORION RELEASING, LLC; COOK PRODUCTIONS, LLC; WWE STUDIOS FINANCE CORP.; MON, LLC; TBV PRODUCTIONS, LLC; CELL FILM HOLDINGS, LLC; VENICE PI, LLC; SURVIVOR PRODUCTIONS, INC.; I AM WRATH PRODUCTION, INC.; POW NEVADA, LLC; HEADHUNTER, LLC; NICOLAS CHARTIER; CRAIG J. FLORES; AVI LERNER; VOLTAGE PRODUCTIONS, INC.; KILLING LINK DISTRIBUTION, LLC; MILLENIUM ENTERTAINMENT, LLC; and DOES 1-20, | CASE NO.<br><br>**COMPLAINT FOR COPYRIGHT MISUSE AND DECLARATORY JUDGMENT OF NO COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Defendants.

Plaintiff Hurricane Electric LLC ("Plaintiff" or "HE"), by counsel, for its Complaint against all of the defendants identified herein ("Defendants"), alleges on knowledge as to its own actions, and otherwise Plaintiff is informed and believes and thereon alleges, as follows:

## NATURE OF THE ACTION

1.     This is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a declaratory judgment that Plaintiff has not infringed any alleged copyright rights of Defendants (including any of Defendants' predecessors and/or successors in interest), directly, contributorily, or vicariously, and in the alternative, to the extent it is found that HE has infringed any such alleged rights, that HE is shielded from liability by Title II of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512, also known as the "safe harbor" provisions of the Online Copyright Infringement Liability Limitation Act (OCILLA).

2.     This action arises from Defendants' counsel serving a subpoena on HE (listing one named Defendant but in the interest of all Defendants), to demand publicly-available information from HE, then improperly using that subpoena in extensive *ex parte* communications with HE to fish for additional information from HE. This led to all Defendants making ever-growing copyright infringement allegations and demands that HE must take action against alleged third-party copyright infringers unidentified to and unknown to HE and with which HE has no relationship and no direct control over, or face legal consequences.

3.     Defendants' cease and desist letters are demanding that upstream service providers like HE simply shut down entire Internet Service Providers (ISPs) that provide Internet access to thousands and sometimes tens of thousands of people, based solely on allegations of infringement by even a single unidentified end-user subscriber to an ISP. Defendants are thus putting HE in an impossible situation, all based on an improper and unlawful overextension of Defendants' alleged copyright rights. Defendants' letters and

COMPLAINT FOR COPYRIGHT MISUSE AND DECLARATORY JUDGMENT OF
NO COPYRIGHT INFRINGEMENT

demands directed to HE in the Northern District of California are abusive, tortious, are otherwise wrongful, and constitute copyright misuse.

4.    Accordingly, this is also an action for copyright misuse due to Defendants' unlawful scheme to secure an exclusive right or limited monopoly not granted by the Copyright Office pursuant to 17 U.S.C. § 102(b), which would be contrary to public policy to grant, by, *inter alia*, alleging that HE is a copyright infringer and demanding that HE take action against alleged third-party copyright infringers unidentified to and unknown to HE, and with which HE has no relationship and no direct control. Defendants' actions improperly extend their alleged copyrights to encompass HE's procedures, processes, systems, and methods of operation.

## THE PARTIES

**Plaintiff Hurricane Electric**

5.    Plaintiff HE is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business in Fremont, California.

6.    HE is a small privately-held company started in Silicon Valley by a start-up individual entrepreneur. HE has grown, in a niche upstream service provider market, to be a global provider of access to the backbone of the Internet, offering Internet Protocol version 4 (IPv4) and Internet Protocol version 6 (IPv6) Internet access, transit, tools, and network applications, as well as data center co-location services in San Jose, California, and in Fremont, California, where the company is based.

7.    HE operates a global IPv4 and IPv6 network and is considered the largest IPv6 backbone in the world as measured by the count of peering interconnections to other networks. Within its global network, HE is connected to over 200 major exchange points and exchanges traffic directly with more than 7,500 different networks. Employing a resilient fiber-optic topology, HE has no less than five redundant 100G paths crossing North America, five separate 100G paths between the U.S. and Europe, and 100G rings in Europe and Asia. Hurricane also has a ring around Africa, and a PoP in Australia.

8.   HE offers an IPv6 tunnel broker service, providing free connectivity to the IPv6 Internet via 6-in-4 IPv6 transition mechanisms. As of May 7, 2018, the company reported 97,067 provisioned tunnels spanning 197 countries via the IPv6 tunnel broker. HE provides an online IPv6 certification program to further education and compliance in IPv6 technology, with at least 15,382 individuals in 155 countries having reached the highest level of the IPv6 certification.

9.   In addition to its vast global network, HE owns and operates two data centers / co-location facilities in Fremont, California, including HE Fremont 2, its newest 200,000 square-foot facility. HE offers IPv4 and IPv6 transit solutions over the same connection. Connection speeds available include 100GE (100 gigabits/second), 40GE, 10GE, and gigabit ethernet.

10.   HE's primary business is as an upstream service provider (referred to in some contexts as an Online Service Provider and its business model for this service does not including "hosting" data on servers for customers accessible by third parties.  HE, as an upstream service provider, does not have access to, or have control over, the content communicated through the Internet by its customers, which are account holders such as ISPs, or by its customers' customers, such as end-user subscribers to an ISP.

11.   As an upstream service provider, HE simply acts as a "highway" that passively provides its customers, and thus its customers' customers, with Internet access. HE Internet connections are business-to-business ("B2B") type connections and are most often sourced from data centers, and include customers such as the Government, including the U.S. Navy's Naval Research Labs which in turn provides service to thousands or tens of thousands of end-users, and ISPs that provide Internet service to thousands or tens of thousands of third-party subscribers over large geographic areas.

12.   While HE's B2B connections at data centers are competitive with certain aspects of major Internet providers like Cox, Comcast, Verizon, etc., HE does not have the connections to go the "last mile" to end-users, and end-users must utilize a service provider to connect to HE.

**Defendants**

13.    HE is informed and believes and based thereon alleges that multiple Defendants, many of which share the same addresses, managing agents, and/or agents for service, are copyright assertion entities in the business of generating income primarily from threats of infringement lawsuits against legitimate technology companies that have nothing to do with any alleged infringements by unnamed end-users of Internet connections.

14.    HE is informed and believes and based thereon alleges that some, if not all, of the Defendants are funded at least in part by litigation funding companies that have no previous interest in Defendants' lawsuits, but nonetheless finance Defendants' lawsuits with a view to sharing the financial recovery if the suit succeeds.

15.    Recent trends in the law have been against copyright assertion entities' use of the court system to wrest nuisance settlements from poor and unsophisticated Internet users who may have been baited into downloading media online in violation of copyright laws. While copyright assertion entities would typically bully individual alleged infringers *en masse* with threats of $150,000 statutory damages awards and attorney-fee-shifting penalties, courts, especially in the Ninth Circuit, have increasingly frustrated that business model by limiting damages awards in such cases to $750 with little or no attorney fee awards. HE is informed and believes and based thereon alleges that Defendants have been forced to adopt a new business model in view of these changes in the law, and are now targeting technology companies higher up the Internet food chain, like HE, who have nothing to do with any alleged infringements by unnamed end-users of Internet connections provided to third-parties by HE's customers (or by HE's customers' customers).

16.    Defendants' counsel claims to represent identified and unidentified owners of various identified and unidentified copyright-protected motion pictures allegedly infringed by HE, "including but not limited to" the present following-named Defendants, which HE is informed and believes and thereon alleges are as follows:

COMPLAINT FOR COPYRIGHT MISUSE AND DECLARATORY JUDGMENT OF
NO COPYRIGHT INFRINGEMENT

17. Dallas Buyers Club, LLC, which is organized under the laws of the state of California and has its principal place of business in the state of Texas.

18. Dallas Buyers Club, LLC, which is organized under the laws of the state of Texas and has its principal place of business in the state of Texas.

19. Glacier Films 1, LLC, which is organized under the laws of the state of Louisiana and has its principal place of business in the state Louisiana.

20. Double Life Productions, Inc., which is organized under the laws of the state of California and has its principal place of business in California.

21. Voltage Pictures, LLC, which is organized under the laws of the state of California and has its principal place of business in the state of California.

22. Orion Releasing, LLC, which is organized and existing under the laws of the state California and has its principal place of business in California.

23. Cook Productions, LLC, which is organized under the laws of the state of California and has its principal place of business in California.

24. WWE Studios Finance Corp., which is organized and existing under the laws of the state of Delaware and has its principal place of business in Connecticut.

25. Mon, LLC, which is organized and existing under the laws of the state of California and has its principal place of business in California.

26. TBV Productions, LLC, which is organized and existing under the laws of the state of California and has its principal place of business in California.

27. CELL Film Holdings, LLC, which is organized and existing under the laws of the state of Delaware and has its principal place of business in California.

28. Venice PI, LLC, which is organized and existing under the laws of the state of California and has its principal place of business in California.

29. Survivor Productions, Inc. which is organized under the laws of the state of California and has its principal place of business in California.

30. I am Wrath Production, Inc., which is organized and existing under the laws of the state of California and has its principal place of business in California.

31.     POW Nevada, LLC, which was organized under the laws of the state of Nevada and has its principal place of business in California but is now dissolved.

32.     Headhunter, LLC, which is organized and existing under the laws of the state of Delaware.

33.     Nicolas Chartier, who is the manager member of the dissolved POW Nevada, LLC, has a principal place of business in California, and is a resident of the state of California.

34.     Craig J. Flores is a resident of the state of California.

35.     Avi Lerner is a resident of the state of California.

36.     Voltage Productions, Inc. which is organized under the laws of the state of California and has its principal place of business in California.

37.     Killing Link Distribution, LLC, which is organized under the laws of the state of California and has its principal place of business in California.

38.     Millenium Entertainment, LLC, California, which is organized under the laws of the state of California and has its principal place of business in California.

39.     HE is informed and believes and thereon alleges that DOES 1-20 include presently-unidentified entities and/or individuals who claim an ownership interest in one or more of the copyrights at-issue, and/or who claim rights to proceeds from the alleged infringements of the copyrights at issue.  (the foregoing named entities and persons, along with the DOE defendants, are herein referred to as "Defendants").

## JURISDICTION

40.     This court has original jurisdiction over the subject matter of this action pursuant to the Copyright Act, 17 U.S.C. §§ 101 et seq., pursuant to 28 U.S.C. §§ 1331, 1332(a) and (c), 1338(a), and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

### **Declaratory Judgment Jurisdiction**

41.     An actual case or controversy exists between the parties to this action.

42.     Defendants, by counsel, have repeatedly asserted in writing and over the

phone that HE has been and still is engaging in acts of copyright infringement, and have repeatedly threatened to take legal action against HE (though Defendants' counsel has not provided any specific, concrete indications that a suit by the Defendants is imminent).

43.    Attached as Exhibits 1, 2, 3, and 4 are true and correct copies of correspondence between counsel for the parties to this action.

44.    Defendants, by counsel, have repeatedly demanded in writing and over the phone that HE immediately terminate the accounts of numerous third-parties over which HE has no control, prospectively agree to take similar actions in the future whenever Defendants' counsel sends future notices, and pay money damages well in excess of $500,000.

45.    Defendants stated the damages are going up as time passes but that the sooner money is paid along with an agreement to provide the name of the publicly available (through WHOIS) customers of HE, the amount of HE's liability will then be capped by agreement. Defendants undeniably recognize that HE cannot identify the alleged infringers and does not have the ability to shut down service only to an alleged infringer (without shutting down service to thousands or tens of thousands of innocent end-users) but will agree to "go away" for a substantial payment with an agreement to provide Defendants, in the future, with publicly available information.

46.    Defendants, by counsel, have also sought additional information from HE so that additional undisclosed copyright assertion entities could be represented by counsel and seek additional damages from HE.

47.    HE has refuted Defendants' allegations and repeatedly refused to comply with Defendants' improper and impractical demands. Nonetheless, Defendants continue to repeat their demands, creating a significant cloud of uncertainty over HE's business, and causing HE to have a real and reasonable apprehension that it will eventually be subject to suit.

48.    The circumstances show that there is a substantial controversy between HE

1    and Defendants, which have adverse legal interests, of sufficient immediacy and reality

2    to warrant the issuance of a declaratory judgment.

3    **Personal Jurisdiction**

4        49.    Personal jurisdiction is proper in the Northern District of California over

5    Defendants identified herein either as organized in this state (whether as a corporation,

6    a limited liability company, a partnership, a joint venture, or an unincorporated

7    association), or as having their principal place of business in this state, because this Court

8    has general personal jurisdiction over those Defendants.

9        50.    Specific personal jurisdiction is proper in the Northern District of California

10   over the non-resident Defendants, that is, Defendants identified herein neither as

11   organized in this state nor as having their principal place of business in this state, because

12   this Court has specific personal jurisdiction over those non-resident Defendants.

13       51.    First, the non-resident Defendants, through counsel, have purposefully

14   directed their activities at, and consummated transactions with, HE in the Northern

15   District of California, and performed acts by which Defendants purposefully availed

16   themselves of the privilege of conducting activities in the Northern District of California,

17   thereby invoking the benefits and protections of its laws, for example as described

18   below:

19           (a)    On July 12, 2019 counsel for Defendants opened miscellaneous

20       action number 1:19-mc-250 in the District of Hawaii entitled *In re Subpoena to*

21       *Hurricane Electric, LLC*, for the purpose of issuing a subpoena to HE under 17

22       U.S.C. § 512(h) to force HE "to identify alleged infringer(s) of Owner's Copyright

23       protected motion pictures." (hereafter collectively "the Subpoena").

24           (b)    Attached as Exhibit 8 is a true and correct copy of the Subpoena.

25           (c)    The information requested in the Subpoena was information publicly

26       available via a WHOIS search online.

27           (d)    The Subpoena which was issued and based upon two letters, dated

28       July 10, 2019 and July 12, 2019 regarding allegations of copyright infringement

COMPLAINT FOR COPYRIGHT MISUSE AND DECLARATORY JUDGMENT OF
NO COPYRIGHT INFRINGEMENT

by HE, was purportedly mailed to HE by counsel for Defendants.

(e)     Counsel for Defendants served the Subpoena on HE in the Northern District of California, namely on "Hurricane Electric LLC dba Hurricane Electric Internet Services Registered Agent: MIKE LEBER 760 Mission Court, Fremont, CA 94539." The Subpoena required HE to take action in the Northern District of California and to search its files in the Northern District of California and to produce documents, all subject to the enforcement powers and penalties of the U.S. District Court for the Northern District of California.

(f)     By serving the Subpoena on HE in the Northern District of California for production of documents, counsel for Defendants purposefully availed himself and his clients for whom he was acting of the privilege of conducting activities in the Northern District of California, thereby invoking the benefits and protections of its laws. For example, the Subpoena stated in part that "the serving party [Defendants by counsel] may move the court for the district where compliance is required [the Northern District of California] for an order compelling production or inspection."

(g)     Counsel for Defendants then improperly used the existence of the Subpoena to communicate extensively with HE in the Northern District of California, *ex parte*, such that the written communications between counsel for Defendants and HE totaled forty-one (41) pages of documents. In these communications counsel for Defendants fished HE for information regarding other alleged infringements to assert against HE.

(h)     When HE's unrepresented Director of Infrastructure explained to Defendants' counsel that HE has no technological way to identify the alleged infringer and that Defendants' counsel must go HE's customer – i.e., the ISP or the U.S. Naval Research Labs – Defendants' counsel responded by stating he was under no obligation to go to the ISPs or to the US Navy and that "the buck stops at HE."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(i)     This is not the first time that counsel for Defendants, in representing one or more of the present Defendants, misused judicial process to search for new alleged copyright infringements. In District of Hawaii case number 19-cv-169-LEK-KJM, listed on some of Defendants' cease and desist letters (Exhibits 1, 2, 3 and 4), counsel for Defendants repeatedly misused judicial process by purporting to serve process on non-parties. In docket entry number 51, dated 10/28/2019 (a true and correct copy of which is attached hereto as Exhibit 5), the Hawaii Court stated:

> The Court is aware that Mr. * * *, as the plaintiffs' counsel, has engaged in the same conduct in at least two other cases: (1) *HB Prods., Inc. v. Doe, et al*., Civil No. 19-00389 ACK-KJM; and (2) *Wicked Nev., LLC v. Doe, et al*., Civil No. 19-00413 SOM-KJM. The Court cautions Mr. * * * that similar actions in the future will result in the Court striking the plaintiffs' filings.

(j)     On or about March 19, 2020, counsel for Defendants sent to HE in the Northern District of California a cease-and-desist letter (Exhibit 1), alleging infringement by HE of copyrights allegedly owned by eight (8) different parties for which HE is now seeking declaratory judgment.

(k)     Counsel for HE responded on April 19, 2020 via email with a request that counsel for Defendants identify, among other things, the clients he represents.

(l)     On or about May 1, 2020, counsel for Defendants responded with a new cease and desist letter (Exhibit 2 hereto) to HE, by counsel, this time alleging infringement by HE of copyrights allegedly owned by thirty (30) different parties for which HE is now seeking declaratory judgment and identifying approximately 2,300 IP addresses where such infringements allegedly took place.

(m)     On or about May 15, 2020, counsel for HE responded to counsel for Defendants with a letter (Exhibit 3) hereto, inadvertently misdated June 15, 2020), explaining in detail why HE, as an Online Service Provider to ISP's, did not infringe, and that in the alternative, HE was protected by the Safe Harbor

provisions of the DMCA.

(n) Notwithstanding HE's explanation of non-infringement and the impossibility of complying with Defendants' demands, on May 20, 2020 counsel for Defendants sent yet another cease and desist letter (Exhibit 4 hereto) to HE, by counsel, reiterating Defendants' position that HE is infringing their copyrights and indicating that as time went on, even "more of [his] clients' motion pictures are infringed."

52. Second, the present claims arise directly out of and relate to the Defendants' activities described herein, all of which were directed to HE in the Northern District of California.

53. Third, the exercise of jurisdiction over the non-resident Defendants in the Northern District of California to resolve these issues comports with fair play and substantial justice, because it is reasonable, for at least the following reasons:

(a) The extent of Defendants' purposeful interjection into the Northern District of California, by counsel, is significant, and includes not only a cease and desist letter, but numerous unrelenting cease and desist letters directed into the Northern District of California over a period of nearly eleven (11) months, asserting ever-growing lists of alleged infringements, stemming from the Rule 45 Subpoena issued to HE in the Northern District of California subject to the penalties of the Northern District of California, which led to 41 pages of communications directly with HE in the Northern District of California, all of which led directly to the present Defendants' allegations of infringement against HE.

(b) Defendants' cease and desist letters are demanding that upstream service providers like HE simply shut down entire service providers that provide Internet access to thousands or tens of thousands of people, based solely on allegations of infringement by even a single end-user subscriber to an ISP.

Defendants are refusing to contact the service providers providing service to end-users who can identify the potential infringer and instead are putting upstream service providers like HE in an impossible situation, all based on an improper and unlawful overextension of Defendants' alleged copyright rights. Defendants' cease and desist letters directed to HE in the Northern District of California are thus abusive, tortious, constitute copyright misuse, and are otherwise wrongful.

(c)     The burden on the non-resident Defendants to defend the suit in the Northern District of California is minimal, for at least the reason that all of the Defendants are represented by the same counsel, and this case will be going forward with the California resident Defendants on the same legal and factual issues with or without the non-resident Defendants. Accordingly, it would actually be a substantially increased burden on the non-resident Defendants to make them pay to duplicate elsewhere the efforts that their counsel will already being making in this Court.

(d)     Additionally, some or all of the non-resident Defendants from east of California are already litigating one or more copyright infringement cases in Hawaii, such as in Case Number: 19-cv-169-LEK-KJM (District of Hawaii), listed on some of Defendants' cease and desist letters (Exhibits 1, 2 & 4). Since Hawaii is far away and not the residence of any of the Defendants, but rather is the location of Defendants' counsel, this tends to indicate that the location of Defendants' counsel is actually the primary consideration for Defendants' preference in venue. Since Defendants' counsel will be present in this Court regardless to address the California-based Defendants, the burden on the non-resident Defendants to likewise defend the suit in the Northern District of California is minimal.

(e)     Proceeding with this action against all Defendants presents no conflict with the sovereignty of any of the non-resident Defendants' states, because the issues here relate solely to federal copyright law, not local state law.

(f)     California has a great interest in this dispute, because Defendants' arguments seek to upend the established business model surrounding providing access to the backbone of the Internet in and around Silicon Valley. Defendants are demanding that upstream service providers like HE simply shut down entire service providers that provide Internet access to thousands or tens of thousands of people, based solely on allegations of infringement by just a single end-user subscriber to an ISP. Decisions that could drastically affect Californians and California's tech industry should not be left to courts of other states.

(g)     Indeed, HE is physically located in San Jose and Fremont, California and its service is part of the Internet backbone. As explained in Wikipedia - https://en.wikipedia.org/wiki/Internet_backbone (a true and correct copy is attached as Exhibit 6):

The Internet backbone may be defined by the principal data routes between large, strategically interconnected computer networks and core routers of the Internet. These data routes are hosted by commercial, government, academic and other high-capacity network centers, the Internet exchange points and network access points, that exchange Internet traffic between the countries, continents, and across the oceans. Internet service providers, often Tier 1 networks, participate in Internet backbone traffic by privately negotiated interconnection agreements, primarily governed by the principle of settlement-free peering.

(h)     HE provides the bulk of its traffic through IXPs (Internet Exchange Points) -- thirteen (13) of which are in California.

(i)     Indeed, Defendants' counsel has already negotiated resolutions with some ISPs (not sourcing connections from HE) for large payments in exchange for withholding further action for infringement. Specifically, Defendants' counsel sued torrent site YTS in Hawaii. There, several of the same Defendants here were plaintiffs represented by the same counsel, and received a payment of over $1,000,000 (One Million Dollars). As stated in a TechWorm article -- https://www.techworm.net/2020/04/torrent-site-yts-piracy-lawsuit-online.html --

COMPLAINT FOR COPYRIGHT MISUSE AND DECLARATORY JUDGMENT OF
NO COPYRIGHT INFRINGEMENT

notwithstanding the settlement, there are still hundreds of pirated movies on that piratical site. (A true and correct screen-print of the web page https://www.techworm.net/2020/04/torrent-site-yts-piracy-lawsuit-online.html is attached hereto as Exhibit 7.)

(j)     Defendants do not actually care about stopping the ongoing infringements of their copyrights; they just want large immediate one-time payments from each service provider they can associate with the still-allegedly-infringing IP addresses.

(k)     The Northern District of California is the most efficient forum for judicial resolution of the dispute, because the vast majority of the present Defendants are Californians and/or have California connections, and HE, the technology at issue, pertinent documents and things, and likely experts all reside in the Northern District of California.

(l)     This forum is certainly important to HE's interest in convenient and effective relief, since HE, the technology at issue, pertinent documents and things, and likely experts all reside in the Northern District of California.

(m)     Finally, there is no alternative forum that would be more convenient for HE and the present Defendants as a whole, or better suited to decide the matter.

**VENUE**

54.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (d).   As explained herein, a substantial part of the events or omissions giving rise to the present claims occurred in the Northern District of California. A substantial part of HE's property and systems that are the subject of the action is situated in the Northern District of California.  Also, at least for the reasons explained herein with respect to specific personal jurisdiction, the California resident Defendants' contacts, through counsel, would be sufficient to subject them to personal jurisdiction in the Northern District of California if it were a separate state.

## INTRADISTRICT ASSIGNMENT

55.     This action is an Intellectual Property proceeding and is to be assigned on a district-wide basis as set forth in LR 3-2(c).

## GENERAL ALLEGATIONS

56.     HE's primary business model is as an upstream service provider that provides its account-holder customers, such as ISPs, with access to the backbone of the Internet. HE does not have access to, or have control over, any content communicated through the Internet by its customers, also called account holders, or by its customers' customers, such as subscribers to a ISP account holder, or other end-users.

57.     HE provides a passive conduit to the backbone of the Internet, and does not engage in any volitional conduct with respect to any content that does or does not pass through its Internet connections including allegedly copyrighted material, such that HE is not the proximate cause of any copyright infringement alleged by Defendants.

58.     Defendants allege that one or more end-users to one or more account holders (including subscribers to ISPs) that obtain access to the backbone of the Internet from HE have committed copyright infringement by downloading copies of Defendants' copyrighted motion pictures using the Internet connections provided to those subscribers by those ISPs.

59.     There is no causal nexus between HE's conduct and the alleged copyright violations by end-user subscribers, who have no relationship with HE.

60.     HE's conduct in providing account holders such as ISPs with passive conduits to the backbone of the Internet is not the proximate cause of any alleged infringement by any end-user subscribers who are customers of the account holders.

61.     A depiction of the Internet transit can be found at: https://en.wikipedia.org/wiki/Internet_transit#/media/File:Internet_Connectivity_Distribution_&_Core.svg

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19  By User: Ludovic.ferre - Internet Connectivity Distribution & Core.svg, CC BY-SA 3.0.
20  https://commons.wikimedia.org/w/index.php?curid=10030716

21      62.    HE's business is largely at the IXP (yellow) level.  In order for an end-user
22  to be connected through HE at the IXP level, that end-user must have a service provider
23  who can connect to the IXP.  As shown in the diagram, this could be a Tier 2 ISP (light
24  blue) or a Tier 3 Network (purple or light green).

25      63.    HE has no control over how an ISP/service provider allocates connections
26  to end-users.  As examples, (a):  a service provider could break up a single version 4, IP
27  address to be used contemporaneously by tens of thousands of end-users, or (b) a service
28  provider may have hundreds (or more) of IP addresses and it can allocate the IP addresses

to customers on an as needed basis thereby allowing the service provider to have many more end-users than IP addresses. This is like "timesharing" where one unit can be used by many people at different times.

64.     When a service provider divides up Internet service from a company like HE, HE has no technological way to determine the identity of the end-user. However, the service provider who controls the shared connection typically has logs and can identify each of its end-users based upon which IP address, the date and the time (just like a hotel can identify the person using a timeshare hotel suite on a given date but the property owner who does not have the records/logs cannot).

65.     HE has no relationship with, nor control over, any end-user subscribers to the one or more ISPs and service providers that obtain access to the backbone of the Internet from HE.

66.     HE has no control over any content communicated through the Internet by any end-user subscribers to the one or more ISPs and service providers that obtain access to the backbone of the Internet from HE.

67.     HE has no control over any content communicated through the Internet by the one or more account holders, such as ISPs, that obtain access to the backbone of the Internet from HE.

68.     As explained above, HE does not even have the ability to identify the end-user as the information required to do so is in the hands of the direct service providers, which are publicly identified and known to Defendants, but which Defendants have refused to contact or serve a subpoena under the DMCA.

69.     The only way that HE could shut down a connection to the Internet of an alleged infringing end-user subscriber who accesses the Internet through an account holder such as an service provider that itself obtains access to the backbone of the Internet from HE, would be to shut down all access to the Internet to that ISP, service provider and/or account holder.

70.     Shutting down all access to the Internet to an ISP or other account holder

COMPLAINT FOR COPYRIGHT MISUSE AND DECLARATORY JUDGMENT OF
NO COPYRIGHT INFRINGEMENT

1  would shut down not only a particular end-user subscriber's access to the Internet, but

2  would also shut down the Internet access of all the other end-user subscribers who gain

3  access to the Internet from that ISP or other account holder, which would typically mean

4  shutting down Internet access for thousands or tens of thousands (perhaps hundreds of

5  thousands if the account holder has multiple IP addresses) of innocent people across wide

6  geographic regions.  It is simply not appropriate to shut down an entire city, a school

7  system, rural area with subscribers covering a 5-state region, or an airport internet

8  provider at such airports as LAX because defendants do not want to bother contacting the

9  ISP providing service from HE's backbone so that Defendants can obtain the information

10  identifying the specific infringer. Yet that is exactly what Defendants are demanding HE

11  do.

12          71.    Illustrating the ridiculousness of Defendants' demands, HE's account

13  holders include, for example, ISP's, and even the U.S. Navy's Naval Research Labs.

14  Defendants know from publicly available records, and as set forth in communications

15  from the undersigned counsel, that these ISPs include companies such as the reportedly

16  leading Internet Service Provider in the Gilbert, Mesa, Queen Creek, San Tan Valley,

17  Coolidge, Eloy, Casa Grande and Florence Arizona Area, the reportedly fourth largest

18  fixed-wireless Internet Service Provider in the US servicing over 50,000 square miles in

19  Iowa, Minnesota, Nebraska, South Dakota, and Wisconsin, ISPs providing service

20  (sometimes the only service available) to major rural areas, ISPs providing service to

21  school districts, and a highly regarded provider of wireless internet services at airports,

22  buildings, stadiums, multifamily and student housing, and commercial real estate, as well

23  as many other similar entities. Defendants are insisting that HE unilaterally shut down all

24  access to the Internet for these account holders thereby shutting off tens of thousands of

25  innocent end-users, for example, just to stop an individual end-user from allegedly

26  improperly downloading movies.  Such demands are inappropriate when all the

27  Defendants need to do to ascertain the identity of the allegedly infringing end-user is to

28  contact the ISP.

72.     Defendants' attempt to use an upstream provider like HE to stop alleged copyright infringement by far-removed downstream end-user subscribers of others' ISP services is analogous to Defendants' threatening an electric utility power company and arguing that it must shut off power to an entire city or region, because the power company is infringing Defendants' copyrights by providing electricity, since an end user could not download an unauthorized copy of a movie without electricity. The absurdity of this analogy highlights the outrageous overbreadth of Defendants' demands on HE.

73.     Defendants purport to have the IP addresses of HE's account holders where actual end-users are allegedly downloading the infringing movies but it is technologically impossible for HE to identify a specific end-user with an IP address as the records identifying the downloader are exclusively in the hands of the ISP.

74.     Nothing is stopping Defendants from directly pursuing the ISPs/service providers associated with the allegedly offending IP addresses and serving subpoenas for the identities of the end-users.

75.     Nothing is stopping Defendants from pursuing the individuals associated with the allegedly offending IP addresses by contacting HE's account holders/service providers, who, unlike HE, typically would have the logs to identify the individual end-user and the ability to shut down Internet access for that individual end-user without affecting Internet service to the tens of thousands of innocent users obtaining service from that service provider.

76.     Notwithstanding Defendants' ability to effectively stop the alleged infringement by directly pursuing the users of the offending IP addresses, Defendants are instead pursuing HE, which has no relationship with, and no ability to control service to the allegedly offending end-user.

77.     HE is informed and believes and based thereon alleges that one or more Defendants do not own the copyrights in the allegedly infringed material that counsel for Defendants has indicated that Defendants own.

78.     HE is informed and believes and based thereon alleges that one or more

COMPLAINT FOR COPYRIGHT MISUSE AND DECLARATORY JUDGMENT OF
NO COPYRIGHT INFRINGEMENT

Defendants are not validly existing legal entities and thus cannot own copyrights in the allegedly infringed material.

79.     Defendants allege that HE has directly, contributorily, and vicariously infringed Defendants' copyright rights.

80.     Defendants allege that HE continues to directly, contributorily and vicariously infringe Defendants' copyright rights.

81.     Defendants allege that HE's infringement of Defendants' copyright rights extends back to at least 2013, or earlier in that the statute of limitations for the alleged acts of HE does not start until the Defendants' learned of the alleged infringements.

82.     Defendants allege that HE's infringement of Defendants' copyright rights is continuing.

83.     Defendants' allegations of copyright infringement by HE are legally and factually baseless.

84.     HE's conduct has not and does not constitute direct copyright infringement, because HE's conduct does not violate any exclusive right granted to copyright holders under 17 U.S.C. § 106.

85.     HE has not had, and does not have, knowledge of an identifiable person or entity that has infringed any copyright owned by Defendants.

86.     Even if HE had or has actual knowledge that specific infringing material is available using its connection, there are no simple nor feasible measures that HE can take to prevent further damage to the copyrighted works.

87.     Even if HE had or has actual knowledge that specific infringing material is available using its connection, it would not be appropriate to shut down service to tens of thousands or hundreds of thousands of innocent end-users when Defendants could easily contact and/or issue a subpoena to the service provider who is HE's account holder, determine the identity of the alleged infringing end-user and have the downstream service provider shut down only that alleged infringing end-user.

88.     HE has not and does not materially contribute to another's infringement of

any copyright owned by Defendants.

89.    HE has not and does not provide its services, including providing ISPs and other account holders with access to the backbone of the Internet, with the object of promoting or advertising its use to infringe copyrights claimed by Defendants.

90.    HE has not and does not advertise, promote or express an intent to promote infringement, nor affirmatively take steps to foster the alleged copyright infringement.

91.    HE has not and does not induce another's infringement of any copyright owned by Defendants.

92.    HE's conduct has not and does not contributorily infringe any copyright owned by Defendants.

93.    HE has not had, and does not have, the right or ability to supervise the alleged infringement of any copyright owned by Defendants.

94.    The alleged infringement of any copyright owned by Defendants has not and does not constitute a draw for subscribers to HE's services.

95.    HE has not, and does not, engage in advertising or promoting of services for facilitating the alleged infringement of any copyright owned by Defendants.

96.    HE has not had, and does not have, a direct financial interest in the alleged infringement of any copyright owned by Defendants.

97.    HE has not and does not vicariously infringe any copyright owned by Defendants.

98.    HE's conduct has not and does not constitute vicarious copyright infringement.

99.    Not only is HE not an infringer of any copyright rights of Defendants, but Defendants have neither demonstrated nor alleged that any of HE's account holders have infringed any copyright rights of Defendants.

100.    Nonetheless, HE has adopted and reasonably implemented, and informs account holders of the HE's system or network of, a policy that provides for the termination in appropriate circumstances of HE's account holders, if any, who are repeat

infringers. Indeed, Judge Fogel of the Northern District of California has in a written opinion recognized Hurricane's policy to terminate infringers in appropriate circumstances.

101.  HE has a notification system for copyright infringement allegations and a procedure for dealing with DMCA-compliant notifications. HE does not actively prevent copyright owners from collecting information needed to issue such notifications.

102.  Under appropriate circumstances, HE has or would terminate account holders who repeatedly or blatantly infringe copyrights.

103.  Accordingly, even if HE were somehow found liable for some type of copyright infringement, which is emphatically denied, HE, as an upstream service provider which does not provide any intermediate or transient storage (as defined in 17 U.S.C. § 512(k)(1)(B)), would not have any liability to Defendants due to the safe harbor limitation of liability under 17 U.S.C. § 512(i).

104.  Defendants have suffered no, and will not suffer any, legally cognizable damages as a result of HE's conduct.

105.  Defendants are not entitled to any injunctive, monetary, or other relief from HE.

### FIRST CLAIM FOR RELIEF

### (Declaratory Judgment of No Direct Copyright Infringement)

106.  HE repeats and realleges the allegations contained in paragraphs 1 to 105 of this Complaint as if fully set forth herein.

107.  Defendants claim that HE's conduct directly violates at least one exclusive right granted to Defendants as alleged copyright holders under 17 U.S.C. § 106.

108.  Under an ongoing threat of litigation, Defendants demand that HE terminate the accounts of account holders and service providers for alleged violations of end-users over which HE has no control, prospectively agree to take similar actions in the future whenever Defendants' counsel sends future notices, and pay money damages well in excess of $500,000.

109.   HE refutes Defendants' allegations of direct copyright infringement and refuses to comply with Defendants' improper and impractical demands.

110.   Defendants' continued and repeated assertions of direct copyright infringement and related demands create a significant cloud of uncertainty over HE's business, and cause HE to have a real and reasonable apprehension that it will eventually be subject to suit.

111.   The circumstances show that there is an actual, present, substantial, and justiciable controversy between HE and Defendants, which have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

112.   HE seeks a declaratory judgment that one or more Defendants do not own the copyrights in the allegedly infringed material that counsel for Defendants has indicated that Defendants own.

113.   HE seeks a declaratory judgment that one or more Defendants are not validly existing legal entities and thus cannot own copyrights in the allegedly infringed material.

114.   HE seeks a declaratory judgment that HE provides a passive conduit to the backbone of the Internet, that HE engages in no volitional conduct with respect to any allegedly copyrighted material, and that HE is not the proximate cause of any copyright infringement alleged by Defendants.

115.   HE seeks declaratory judgment that HE's conduct has not and does not constitute direct copyright infringement, because HE's conduct does not violate any exclusive right granted to copyright holders under 17 U.S.C. § 106.

116.   HE seeks declaratory judgment that Defendants have suffered no, and will not suffer any, legally cognizable damages as a result of HE's conduct.

117.   HE seeks declaratory judgment that Defendants are not entitled to any injunctive, monetary, or other relief from HE.

/ / /

/ / /

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment of No Contributory Copyright Infringement)**

118.    HE repeats and realleges the allegations contained in paragraphs 1 to 117 of this Complaint as if fully set forth herein.

119.    Defendants claim that HE's conduct constitutes contributory infringement of Defendants' alleged copyrights.

120.    Under an ongoing threat of litigation, Defendants demand that HE terminate the accounts of account holders and service providers over which HE has no control, prospectively agree to take similar actions in the future whenever Defendants' counsel sends future notices, and pay money damages well in excess of $500,000.

121.    HE refutes Defendants' allegations of contributory copyright infringement and refuses to comply with Defendants' improper and impractical demands.

122.    Defendants' continued and repeated assertions of contributory copyright infringement and related demands create a significant cloud of uncertainty over HE's business, and cause HE to have a real and reasonable apprehension that it will eventually be subject to suit.

123.    The circumstances show that there is an actual, present, substantial, and justiciable controversy between HE and Defendants, which have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

124.    HE seeks a declaratory judgment that one or more Defendants do not own the copyrights in the allegedly infringed material that counsel for Defendants has indicated that Defendants own.

125.    HE seeks a declaratory judgment that one or more Defendants are not valid legal entities and thus cannot own copyrights in the allegedly infringed material.

126.    HE seeks a declaratory judgment that HE has not had, and does not have, knowledge of another's infringement of any copyright owned by Defendants.

127.    HE seeks a declaratory judgment that even if HE had or has actual knowledge that specific infringing material is available using its system, there are no

simple or feasible measures that HE can take to prevent further damage to the copyrighted works.

128.   HE seeks a declaratory judgment that even if HE had or has actual knowledge that specific infringing material is available using its system, there are no reasonable or appropriate measures that HE can take to prevent further damage to the copyrighted works.

129.   HE seeks a declaratory judgment that HE has not and does not materially contribute to another's infringement of any copyright owned by Defendants.

130.   HE seeks a declaratory judgment that Defendants cannot prove that HE provides its services, including providing ISPs and other account holders with access to the backbone of the internet, with the object of advertising or promoting its use to infringe copyrights.

131.   HE seeks a declaratory judgment that Defendants cannot prove that HE clearly expressed an intent to promote infringement or affirmatively took steps to foster copyright infringement.

132.   HE seeks a declaratory judgment that HE provides a passive conduit to the backbone of the Internet, that HE engages in no volitional conduct with respect to any allegedly copyrighted material, and that HE is not the proximate cause of any copyright infringement alleged by Defendants.

133.   HE seeks a declaratory judgment that HE has not and does not induce another's infringement of any copyright owned by Defendants.

134.   HE seeks declaratory judgment that HE's conduct has not and does not constitute contributory copyright infringement.

135.   HE seeks declaratory judgment that Defendants have suffered no, and will not suffer any, legally cognizable damages as a result of HE's conduct.

136.   HE seeks declaratory judgment that Defendants are not entitled to any injunctive, monetary, or other relief from HE.

## THIRD CLAIM FOR RELIEF

## (Declaratory Judgment of No Vicarious Copyright Infringement)

137.   HE repeats and realleges the allegations contained in paragraphs 1 to 136 of this Complaint as if fully set forth herein.

138.   Defendants have suggested, and expressly not waived their argument that, HE's conduct constitutes vicarious infringement of Defendants' alleged copyrights.

139.   Under an ongoing threat of litigation, Defendants demand that HE terminate the accounts of account holders and service providers where end-users allegedly infringe Defendants' right, but over which HE has no control. Defendants demand that HE prospectively agree to take similar actions in the future whenever Defendants' counsel sends future notices, and pay money damages well in excess of $500,000.

140.   HE refutes Defendants' allegations of vicarious copyright infringement and refuses to comply with Defendants' improper and impractical demands.

141.   Defendants' assertions of vicarious copyright infringement and related demands create a significant cloud of uncertainty over HE's business, and cause HE to have a real and reasonable apprehension that it will eventually be subject to suit.

142.   The circumstances show that there is an actual, present, substantial, and justiciable controversy between HE and Defendants, which have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

143.   HE seeks a declaratory judgment that one or more Defendants do not own the copyrights in the allegedly infringed material that counsel for Defendants has indicated that Defendants own.

144.   HE seeks a declaratory judgment that one or more Defendants are not valid legal entities and thus cannot own copyrights in the allegedly infringed material.

145.   HE seeks a declaratory judgment that HE has not had, and does not have, the right or ability to supervise the alleged infringement of any copyright owned by Defendants.

146.   HE seeks a declaratory judgment that the alleged infringement of any copyright owned by Defendants has not and does not constitute a draw for subscribers to HE's services.

147.   HE seeks a declaratory judgment that it has not, and does not, engage in advertising or promoting of services for facilitating the alleged infringement of any copyright owned by Defendants.

148.   HE seeks a declaratory judgment that HE has not had, and does not have, a direct financial interest in the alleged infringement of any copyright owned by Defendants.

149.   HE seeks a declaratory judgment that HE has not and does not vicariously infringe any copyright owned by Defendants.

150.   HE seeks declaratory judgment that HE's conduct has not and does not constitute vicarious copyright infringement.

151.   HE seeks declaratory judgment that Defendants have suffered no, and will not suffer any, legally cognizable damages as a result of HE's conduct.

152.   HE seeks declaratory judgment that Defendants are not entitled to any injunctive, monetary, or other relief from HE.

## FOURTH CLAIM FOR RELIEF

### (In the Alternative, Declaratory Judgment that Safe Harbor Applies)

153.   HE repeats and realleges the allegations contained in paragraphs 1 to 152 of this Complaint as if fully set forth herein.

154.   HE seeks a declaratory judgment that HE has adopted and reasonably implemented, and informs account holders of the HE's system or network of, a policy that provides for the termination in appropriate circumstances of HE's account holders who are repeat infringers.

155.   HE seeks a declaratory judgment that HE has a working notification system for copyright infringement allegations and a procedure for dealing with DMCA-compliant notifications. HE seeks a declaratory judgment that HE does not

1  actively prevent copyright owners from collecting information needed to issue such
2  notifications.

3      156.   HE seeks a declaratory judgment that under appropriate circumstances, HE
4  has or would terminate account holders who repeatedly or blatantly infringe copyrights.

5      157.   Even if HE were somehow found liable for some type of copyright
6  infringement, which is emphatically denied, HE seeks, in the alternative, a declaratory
7  judgment that HE is an online service provider that does not provide any intermediate or
8  transient storage as defined in 17 U.S.C. § 512(k)(1)(B), and that HE does not have any
9  liability to Defendants due to the safe harbor limitation of liability under
10  17 U.S.C. § 512(i).

11      158.   HE seeks declaratory judgment that Defendants have suffered no, and will
12  not suffer any, legally cognizable damages as a result of HE's conduct.

13      159.   HE seeks declaratory judgment that Defendants are not entitled to any
14  injunctive, monetary, or other relief from HE.

15  <center>**FIFTH CLAIM FOR RELIEF**</center>
16  <center>**(Copyright Misuse)**</center>

17      160.   HE repeats and realleges the allegations contained in paragraphs 1 to 159 of
18  this Complaint as if fully set forth herein.

19      161.   Defendants' cease and desist letters and related communications demand that
20  HE, an upstream service provider of access to the backbone of the Internet to account
21  holders like ISPs, simply shut down entire ISPs and other commercial and governmental
22  account holders that provide Internet access to thousands or tens of thousands of innocent
23  people, based solely on allegations of infringement by an individual end-user subscriber
24  to the ISP or account holder. Defendants are thus putting HE in an impossible situation,
25  all based on an improper and unlawful overextension of Defendants' alleged copyright
26  rights. Defendants' letters and demands to HE are abusive, tortious, and otherwise
27  wrongful.

28      162.   Defendants' unlawful scheme seeks to secure an exclusive right or limited

monopoly not granted by the Copyright Office pursuant to 17 U.S.C. § 102(b), which would be contrary to public policy to grant, by, inter alia, alleging that HE is a copyright infringer and demanding that HE take action against alleged third-party copyright infringers with which HE has no relationship and no direct control over. Defendants' actions improperly extend their alleged copyrights to encompass HE's procedures, processes, systems, and methods of operation, and thus constitute copyright misuse.

163.   Defendants' misuse of their alleged copyrights against HE renders them unenforceable against HE.

164.   Since Defendants' alleged copyrights are unenforceable against HE, HE's conduct has not and does not constitute infringement of exclusive rights, if any, granted to Defendants under 17 U.S.C. § 106 in connection with Defendants' alleged copyrights, neither directly, contributorily, vicariously, nor otherwise.

165.   Defendants have suffered no, and will not suffer any, legally cognizable damages as a result of HE's conduct.

166.   Defendants are not entitled to any injunctive, monetary, or other relief from HE.

## SIXTH CLAIM FOR RELIEF

### (Attorney Fees under 17 U.S.C. § 505)

167.   HE repeats and realleges the allegations contained in paragraphs 1 to 166 of this Complaint as if fully set forth herein.

168.   Defendants' allegations of copyright infringement and its demands against HE are frivolous and objectively unreasonable, and are not motivated by protecting their copyrights, which could be effectively protected by pursuing the actual alleged end-user infringers, or even the service providers that control the Internet access of the actual alleged infringers, but cannot be reasonably protected by attacking HE, which provides passive access to the backbone of the Internet to account holders such as ISPs. In these circumstances there is a need to award HE its costs including its attorney fees to deter copyright assertions entities like Defendants from abusing the system and frustrating the

1    legitimate purposes of the Copyright Act.

2        **WHEREFORE**, HE requests judgment against Defendant as follows:

3        With respect to the **FIRST CAUSE OF ACTION**, an order declaring that:

4        A.    HE has not and does not directly infringe any copyright rights of

5    Defendants;

6        B.    Defendants have suffered no, and will not suffer any, legally cognizable

7    damages as a result of HE's actions;

8        C.    Defendants are not entitled to any injunctive relief or damages against HE;

9        D.    HE is awarded its costs, expenses and attorneys' fees in this action; and

10       E.    Awarding such other further relief to which HE may be entitled as a matter

11   of law or equity, as the Court deems just and proper.

12       With respect to the **SECOND CAUSE OF ACTION**, an order declaring that:

13       F.    HE has not and does not contributorily infringe any copyright rights of

14   Defendants;

15       G.    Defendants have suffered no, and will not suffer any, legally cognizable

16   damages as a result of HE's actions;

17       H.    Defendants are not entitled to any injunctive relief or damages against HE;

18       I.    HE is awarded its costs, expenses and attorneys' fees in this action; and

19       J.    Awarding such other further relief to which HE may be entitled as a matter

20   of law or equity, as the Court deems just and proper.

21       With respect to the **THIRD CAUSE OF ACTION**, an order declaring that:

22       K.    HE has not and does not vicariously infringe any copyright rights of

23   Defendants;

24       L.    Defendants have suffered no, and will not suffer any, legally cognizable

25   damages as a result of HE's actions;

26       M.    Defendants are not entitled to any injunctive relief or damages against HE;

27       N.    HE is awarded its costs, expenses and attorneys' fees in this action; and

28       O.    Awarding such other further relief to which HE may be entitled as a matter

of law or equity, as the Court deems just and proper.

With respect to the **FOURTH CAUSE OF ACTION**, in the alternative to the relief sought with respect to any or all of the first, second, and third causes of action, an order declaring that:

P.     HE is an online service provider that does not provide any intermediate or transient storage as defined in 17 U.S.C. § 512(k)(1)(B), and that HE does not have any liability to Defendants due to the safe harbor limitation of liability under 17 U.S.C. § 512(i);

Q.     Defendants have suffered no, and will not suffer any, legally cognizable damages as a result of HE's actions;

R.     Defendants are not entitled to any injunctive relief or damages against HE;

S.     HE is awarded its costs, expenses and attorneys' fees in this action; and

T.     Awarding such other further relief to which HE may be entitled as a matter of law or equity, as the Court deems just and proper.

With respect to the **FIFTH CAUSE OF ACTION**, an order declaring that:

U.     Defendants misused their alleged copyrights against HE, and thus rendered them unenforceable against HE;

V.     Defendants have suffered no, and will not suffer any, legally cognizable damages as a result of HE's actions;

W.     Defendants are not entitled to any injunctive relief or damages against HE;

X.     HE is awarded its costs, expenses and attorneys' fees in this action;

Y.     Awarding such other further relief to which HE may be entitled as a matter of law or equity, as the Court deems just and proper; and

Z.     Entry of an injunction ordering that Defendants, their officers, agents, members, and servants, and all persons acting in concert with them, including Defendants' counsel, be permanently restrained from alleging that HE is liable for alleged copyright infringement by downstream users of Internet access provided by HE, and be permanently restrained from demanding that HE take action against any such

alleged copyright infringements.

With respect to the **SIXTH CAUSE OF ACTION**:

AA.   An award to HE of its costs including its attorney fees incurred in connection with defending against Defendants' copyright infringement allegations, with interest; and

BB.   An award of such other and further relief as the Court deems just and proper.

DATED:  June 10, 2020

NEIL D. GREENSTEIN
MARTIN R. GREENSTEIN
TECHMARK

By:   /Neil D. Greenstein/
Attorneys for Plaintiff
HURRICANE ELECTRIC LLC

## JURY TRIAL DEMAND

Plaintiff, Hurricane Electric LLC, hereby requests a trial by jury on all issues triable of right by a jury

DATED:  June 10, 2020

NEIL D. GREENSTEIN
MARTIN R. GREENSTEIN
TECHMARK

By:   /Neil D. Greenstein/
Attorneys for Plaintiff
HURRICANE ELECTRIC LLC