# EXHIBIT 3

# TECHMARK

GREENSTEIN LAW, P.C.
TRADEMARK AND INTELLECTUAL PROPERTY LAW
TEL: (347) 514-7717

**NEIL D. GREENSTEIN**
ATTORNEY AT LAW
DIRECT TEL: (571) 206-4840
E-MAIL: NDG@TECHMARK.COM

June 15, 2020

TECHMARK®
1751 PINNACLE DRIVE
SUITE 1000
TYSONS, VA 22102

Kerry S. Culpepper, Esq.
Culpepper IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua Kona, HI 96740

**Re: Allegations of Copyright Infringement against Hurricane Electric**

Dear Mr. Culpepper,

    I write in response to your letter of March 19, 2020 ("March 19, 2020 Letter"), my email to you seeking additional information relating to your claims in the March 19, 2020 letter, and your subsequent letter of May 1, 2020 ("May 1, 2020 Letter") (together, March 19, 2020 Letter and May 1, 2020 Letter are hereinafter the "Letters").

    First, I would point out that your March 19, 2020 Letter, and the subpoena[1] you obtained dated July 12, 2019, complained about alleged infringing activities on four (4) IP addresses. I called you to inform you of my representation of Hurricane Electric ("HE"), and you called me back on April 6, 2020. I confirmed to you my representation of HE and informed you that I learned you previously had communications with my client. As such, I asked you to forward me copies of all such communications. You subsequently uploaded 41 pages of documents purporting to be the total communications directly between you and my client.

    After reviewing the documents that you uploaded, it appeared that you were not representing all of the clients mentioned in your March 19, 2020 letter. As such, I sent you an email on April 19, 2020 asking you to identify which clients you represented and the IP addresses on which such client's rights had allegedly been infringed.

---

[1] We believe the subpoena was not properly issued and Hurricane reserves all rights with respect to the validity and propriety of that subpoena.

You then responded on May 1, 2020 and instead of claiming to represent a subset of some 8 clients, you now claim to represent some 39 clients. In addition, you provided an attachment of some 2300+ IP addresses on which you claim infringement occurred. Notably, your letter failed to identify sufficient facts even to make out a prima facie case of infringement.

I provide below some information for you about HE relating to the overall and general nature of HE activities. While you presumably know these facts based upon your research and your calls with my client, I provide them to ensure there is no doubt about HE's activities. After this letter should any of your clients decide to continue this dispute, I insist that each of your clients' claims be segregated. We want to be sure to address each client's claims specifically, and confusion is inevitable if you are not clear which client is making each claim.

**Hurricane Electric is an Online Service Provider**

With respect to the activities that you complained of, HE is an Online Service Provider ("OSP") and does not "host," have access to or have control over the content provided by its customers/subscribers. HE simply acts as a "highway" and provides subscribers with internet access. HE internet connections are B2B-type connections and are most often to a data center, an ISP, the government[2], or a major business. Even though HE is a small company founded in Mr. Lieber's garage, it competes with the niche "B2B" online access side of Verizon, Comcast, AT&T. For example, as you know, HE provides network access to ISPs (Internet Service Providers) – who typically use that connection to provide service to hundreds or thousands of third-party subscribers.

Your letters prematurely jump into "safe harbors" under the DMCA, but you are well experienced in copyright law and you know that you must first show liability. It is only if there is liability that a safe harbor even becomes potentially relevant. It is simply wrong and indeed illogical for anyone to suggest that a company may have liability for an alleged failure to follow a safe harbor when no liability exists under the copyright (or other) law.

---

[2] As you know, some of the IP addresses in issue were provided to the U.S. Navy's Naval Research Labs. I find it interesting that you asked a federal district court for a subpoena relating to a potential claim against the US Navy, when you know that claims against the US Government MUST be brought in the US Federal Court of Claims and that the Federal District Courts do not have jurisdiction over such claims. That issue is, however, is for another day should any of your clients decide to proceed.

To address this logically, one must first analyze whether or not there is even potential liability by HE.  Only if there is potential liability need one address whether there is "protection" from an otherwise potential liability under a safe harbor.  Your letter seems to suggest that if a company does not fit into a safe harbor there is liability without regard to whether there is copyright infringement.  While that would be a novel approach, such an approach is unsupported in the law.

**Hurricane Electric Has Not Infringed Any of Your Client's Copyrights**

Had you analyzed the law instead of making a conclusory assumption of liability, the only reasonable conclusion is that HE has no liability whether for direct, contributory, or vicarious copyright infringement.

 "As a threshold question, a plaintiff who claims copyright infringement must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004), *citing* 17 U.S.C. Section 501(a)(2003); *Ets-Hokin*, 225 F.3d at 1073.  You have only provided to HE a chart of alleged copyrights (including the alleged owner, and motion picture title) and in your May 1, 2020 letter you have neither alleged that the copyrights are registered nor have you provided alleged copyright certificates.  Nonetheless, even if one were to assume that the copyrights were registered and valid, infringement is still lacking.

### *Direct Copyright Infringement*

To prove a claim of direct copyright infringement, a plaintiff must show that he owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act.  *Robertson*, 357 F.3d at 1076, *citing A & M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  Your Letters never allege, nor could they, that HE directly infringed or violated any of your clients' rights under the Copyright Act.  You have alleged, instead, simply that one or more of HE's subscribers have violated your clients' rights.  Based on this, your Letters effectively admit that HE is not liable for any direct copyright infringement.

### *Contributory Copyright Infringement*

To prove a claim of contributory copyright infringement, a plaintiff must show that the defendant, with knowledge of the infringing activity, induced, caused or materially contributed to the infringing conduct of another. *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971). Your Letters similarly fail to establish that HE is guilty of contributory infringement.

The Second circuit is not alone in its analysis of contributory infringement. Indeed, the Ninth Circuit – of course, the circuit where you are located and where HE is located – has spoken loud and clear on the issue. In a recent published precedential decision of which you are aware[3], *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d. 1142 (9th Cir., 2018)(copy attached),  Cobbler Nevada didn't have the hubris to sue Comcast – in that case the ISP (a party one level closer to the alleged infringer than HE is in your allegations) -- but obtained records from Comcast that Gonzales was assigned the IP address in issue. The District Court found no infringement liability against the subscriber, Gonzales, and the 9th circuit affirmed both the finding of no infringement and the award of attorneys' fees against Cobbler Nevada. As to direct infringement, the 9th circuit stated:

> The only connection between Gonzales and the infringement was that he was the registered internet subscriber and that he was sent infringement notices. To establish a claim of copyright infringement, Cobbler Nevada "must show that [it] owns the copyright and that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Cobbler Nevada has not done so.

As to the claim of contributory infringement, the 9th circuit was similarly instructive and definitive.

> We have adopted the well-settled rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170 (9th Cir. 2007) (alteration in original)

---

[3] Your client is the party that not only lost but had to pay attorneys' fees. Certainly, you became aware of this case, at the very least, as part of the normal vetting in taking on a representation of a client.

4

(quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 914, 930 (2005)). Stated differently, "liability exists if the defendant engages in personal conduct that encourages or assists the infringement." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001) (internal quotation marks omitted). A claim for contributory infringement requires allegations that the defendant is "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Fonovisa v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (brackets omitted) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159, 1162 (2d Cir. 1971)). **Cobbler Nevada's contributory infringement claim is premised on a bare allegation that Gonzales failed to police his internet service. This perfunctory allegation, without more, does not sufficiently link Gonzales to the alleged infringement.** (emphasis added)

The 9th Circuit went on to state:

> We analyze contributory liability "in light of 'rules of fault-based liability derived from the common law,' and common law principles establish that intent may be imputed." *Id.* at 1170–71 (quoting *Grokster*, 545 U.S. 934–35).
>
> Turning to the first strand, Cobbler Nevada's complaint lacks any allegations that Gonzales "actively encourage[d] (or induc[ed]) infringement through specific acts." *Id.* at 1170. Nothing in Cobbler Nevada's complaint alleges, or even suggests, that Gonzales actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct." *Grokster*, 545 U.S. at 937.

Just like Cobbler Nevada's claim in the *Gonzales* case, none of your clients (including Cobbler Nevada) have, nor could they have consistent with FRCP 11 in that HE is merely an online service provider of internet network access, made any allegations that HE "actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct."

    The 9th Circuit continued –

5

>Nor does the second strand implicate Gonzales. Providing internet access can hardly be said to be distributing a product or service that is not "capable of substantial" or "commercially significant noninfringing uses." *Sony*, 464 U.S. at 442.

HE is an online service provider which provides internet connections to major companies and government organizations. Your clients can not credibly suggest that the U.S. Navy doesn't have significant "noninfringing" use for an internet connection. Nor could your clients credibly suggest that an Internet Service Provider to which HE provides it online service doesn't have a significant "noninfringing" use.

    Your clients, including Cobbler Nevada, know that their theories "both stray[s] from precedent and effectively create[s] an affirmative duty for private internet subscribers to actively monitor their internet service for infringement." In *Cobbler Nevada*, the 9th circuit noted that "[i]mposing such a duty would put at risk any purchaser of internet service who shares access with a family member or roommate, or who is not technologically savvy enough to secure the connection to block access by a frugal neighbor. This situation hardly seems to be one of "the circumstances in which it is just to hold one individual accountable for the actions of another."

    In view of the clear ruling by the 9th Circuit, the egregiousness of your clients' allegations is further evident from the fact that HE is not the private internet subscriber and is not even the ISP. HE is an online service provider – who sells network connections to ISPs.

    Absent facts from your clients that HE "actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct," I don't believe your clients will make it past a FRCP 12(b)(6) motion to dismiss. Indeed, in view of the Cobbler Nevada case, your clients will likely not only lose such a motion, but will likely have to pay HE's attorneys fees. In my view, there is also a significant risk of sanctions by the Court.

    If you believe that HE has actively induced or materially contributed to the infringement through "purposeful, culpable expression and conduct," or is somehow infringing your clients' rights, you must provide me with those facts and theories. Again, this must be done on a client by client basis and should include all of the facts supporting a prima facie case including copyright registration certificates, and evidence in support of your clients' claims.

Simply put, we don't believe that HE has engaged in contributory copyright infringement.

### *Vicarious Copyright Infringement*

To prove a claim of vicarious copyright infringement, a plaintiff must show that the defendant enjoys or enjoyed a direct financial benefit from another's infringing activity and has the right and ability to supervise the infringing activity. *See Robertson*, 357 F.3d at 1076, *citing Napster, Inc.,* 239 F.3d at 1022 (citing *Gershwin Publ'g Corp.,* 443 F.2d at 1162); *Fonovisa, Inc., v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* Section 12.04[A][1] (perm.ed., rev.vol.2003).  HE has no ability to supervise or control any relevant content and has no hand in the making or distribution of such content.  HE has no direct financial interest in any of the purchasers of the internet connections and gets no financial benefit from any alleged infringing activity by a user.  Moreover, HE is an OSP providing only an internet network connection and has no control over, the content itself.  HE's customers or HE's customer's customers, or even HE's customer's customer's customers are the users of the internet network connection.  Thus, HE cannot be vicariously liable for the alleged copyright infringement.

## Even if Hurricane Electric Was Somehow Liable for Copyright Infringement – Which is Emphatically Denied – HE is protected by the DMCA Safe Harbor

As established above, HE is not liable for any sort of copyright infringement.  Without any infringement, the *threshold* has not been met and no safe harbor discussion is necessary.  Nonetheless, for completeness, even if HE were somehow liable for some type of copyright infringement, which is emphatically denied, HE, as an online service provider which does not provide any intermediate or transient storage (as defined in 17 U.S.C. § 512(k)(1)(B), would not have any liability due to the safe harbor limitation of liability under 17 U.S.C. § 512(i).

## Hurricane Electric Is Not Subject to Jurisdiction in Hawaii

Jurisdiction over HE in Hawaii has not been, and cannot be, established.  HE is located, headquartered and operates from Fremont, California.   California is HE's principal place of business.  Indeed, HE does not even have a place of business in Hawaii.

**HE Has No Interest in This Matter**

As a practical matter, HE has no interest, financial or otherwise, in your clients' disputes with alleged infringers who may have improperly downloaded movies. As such, HE promptly provided you with information, including names and addresses, of the subscribers who leased the internet connections. That gave your clients all of the information they needed to take appropriate action against the alleged infringers.

**Conclusion**

I understand from my client – which I trust must have been a miscommunication – that you took the position that your clients were not obligated to go after the actual infringers or to seek the actual infringers' identities from the ISPs which purchase internet connections from HE. That statement would be facially erroneous, as discussed above, as the cases discussed above make it clear that your clients have the burden of proof and cannot prove infringement merely by relying upon the fact that HE is an online service provider of an internet network connection.

If you have facts supporting a *prima facie* case against HE, I am open to receiving those facts. Again, that must be on a client by client basis as we will keep meticulous records for a later attorney fee petition.

Finally, if you would like to discuss this matter, I am available by telephone this month, and, travel restrictions due to COVID-19 permitting, I will be in Kona next month where we can meet in-person after I complete my arrival quarantine/isolation.

Absent a further response from you by June 15, 2020, we will consider this matter closed.

Sincerely yours,

Neil D. Greenstein